Cynthia L. Rice (SBN 87630)
Verónica Meléndez (SBN 294106)
Ezra Kautz (SBN 330352)
Chelsea Lalancette (SBN 330207)
CALIFORNIA RURAL LEGAL ASSISTANCE FOUNDATION
2210 K Street, #201
Sacramento, CA 95816
Tel: (916) 446 7905
Fax: (916) 446 3057
cricecrlaf@comcast.net
vmelendez@crlaf.org
ekautz@crlaf.org
chelseal@crlaf.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DOE, a fictitious name; CLARA DOE, a fictitious name; and "I.D.," a fictitious name, by and through her next friend, MARIA DOE;<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SACRAMENTO; SCOTT JONES, SACRAMENTO COUNTY SHERIFF, in his official capacity; SACRAMENTO COUNTY SHERIFF'S OFFICE; "DEPUTY ROE," a fictitious name; JAGDEEP SINGH; SUSHMA GIRI; and ALIDA ESTRADA,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

1

## **PRELIMINARY STATEMENT**

1.      Like millions of other households in California, the Doe family suffered a loss of income at the beginning of the COVID-19 pandemic, when Maria Doe's restaurant job vanished. Rather than respect the emergency eviction moratorium, the person who was renting to the Doe family ordered them to leave and shut off the electricity. Maria called the County for help—but rather than receive assistance, she was victimized again. Before Code Enforcement would send an inspector, the lessor enlisted the help of the Sacramento Sheriff's Office to force the family to vacate their apartment by threats, intimidation, and coercion.

2.      Maria is an immigrant from Mexico, and she is not proficient in English. However, the officer who participated in this eviction—"Deputy Roe"—demanded, repeatedly and aggressively, that she "speak English."

3.      Plaintiffs bring this civil rights action (under Section 1983 and state law) against the County, the Sheriff's Office, and Sheriff Scott Jones ("the Municipal Defendants") because this wrongful eviction was caused in substantial part by the Municipal Defendants' refusal to adopt a language access policy or train officers on how to interact with members of the public who are not proficient in English without violating their rights.

## **PARTIES**

4.      Plaintiffs Maria Doe ("Maria") and Clara Doe ("Clara") are residents of Sacramento County. Maria Doe is an immigrant from Mexico whose primary language is Spanish. She is not proficient in English.  Maria and Clara are proceeding under a fictitious last name.

5.      "I.D." is a fictitious name for a minor child, a resident of Sacramento County. "I.D." sues under her initials pursuant to Local Rule 140(a)(i). Maria Doe has authority to file on behalf of I.D. as next friend under Rule 17(c) of the Federal Rules of Civil Procedure.

COMPLAINT                                                                        *Doe, et al v. County of Sacramento, et al.*

6.    Plaintiffs Maria Doe, Clara Doe, and I.D. ("Plaintiffs") are and are perceived to be Latinas and Hispanic. They live, work, and go to school in Sacramento County.

7.    Defendant Scott Jones ("Jones") is the Sheriff of Sacramento County.

8.    The County of Sacramento ("the County") is a municipal entity with the capacity to sue and be sued.

9.    Sacramento County Sheriff's Office ("the Sheriff's Office") is an agency of the County.

10.    "Deputy Roe" is a fictitious name of a law enforcement officer employed by the Sheriff's Office during the events described in this Complaint. Deputy Roe's identity is unknown to Plaintiffs. Plaintiffs will amend the Complaint when Deputy Roe's name is disclosed.

11.    Defendants Jagdeep Singh and Sushma Giri ("the Owners") are residents of Hercules, California, and were at the relevant time the owners of 5973 Vista Avenue, Sacramento, California.

12.    Defendant Alida Estrada ("Estrada") is a resident of Sacramento County, and was at the relevant time a tenant at 5973 Vista Avenue.

## JURISDICTION AND VENUE

13.    This is an action for injunctive relief and damages pursuant to 42 U.S.C. § 1983 based upon the violation of Plaintiffs' rights under the Fourteenth Amendments to the United States Constitution. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. § 1983 and questions of federal constitutional law.

14.    Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. § 1367.2.

15.    Venue is proper in the Eastern District in that the events and conduct complained of herein all occurred in the Eastern District.

## ALLEGATIONS

**Rental of the Apartment**

16.    On  or  around  November  2019,  Plaintiff  Maria  Doe  answered  an

3

COMPLAINT                                              *Doe, et al v. County of Sacramento, et al.*

advertisement on Facebook for an apartment for rent. After viewing the unit at 5973 Vista Avenue, Sacramento, CA 95824 ("the Apartment"), Maria entered into an oral lease with Alida Estrada to rent the Apartment for $1100.00 per month.

17.     On or about November 6, 2019, Plaintiff Maria Doe moved into the Apartment with three of her children: Plaintiff Clara Doe, a high school student; Plaintiff I.D., who was 10 years old at that time; and Olivia, who moved out after approximately one month.

18.     The Apartment was located in a detached structure behind the main house at 5973 Vista Avenue. In the front of the structure was a garage containing one or more vehicles, tools, paint, and other items. The Apartment was behind the garage, separated by a wall.

19.     Soon after the Doe family moved into the Apartment, they became aware of numerous, serious conditions of disrepair, including: no heat; shower did not work; outlet overheated; windows broken and insecure; washer/dryer non-functional; holes in the walls; bathroom faucet did not work; infestation of cockroaches; termites; and ants. Cracks in the ceiling were patched with duct tape and metal cleats. The family was limited in what they could cook—even to use the microwave, they had to disconnect everything else in the Apartment.

20.     Plaintiffs reported these conditions to Estrada, but she did nothing to repair them. At most, she reduced the rent to $1000.00 and allowed Maria to deduct the cost of space heaters. Estrada did send a worker to look at the electricity, but the worker did not make any repairs.

**Beginning of the COVID-19 Pandemic**

21.     On March 4, 2020, California Governor Gavin Newsom declared a state of emergency due to the spread of COVID-19.

22.     On March 5, 2020, the County declared a public health emergency and a local emergency.

23.     On March 10, the County Board of Supervisors ratified the March 5

declaration of local public health emergency.

24.     On March 15, 2020, Governor Newsom called for the closure of all bars, and directed that restaurants reduce capacity to one half.

25.     On March 16, 2020, the County issued a statement urging compliance with the Governor's March 15 directives, including the reduction in restaurant service.

26.     On March 16, 2020, Governor Newsom signed Executive Order N-28-20, authorizing local governments to halt evictions of households who suffered a decrease in income due to COVID-19. The Governor strongly encouraged cities and counties to enact such protections.

27.     On March 19, 2020, California Governor Gavin Newsom signed Executive Order N-33-20 ("the Stay Home Order"), which "order[ed] all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors."

28.     Also on March 19, 2020, the County issued an order ("the County Public Health Order") that "All individuals in the County of Sacramento . . . are ordered to stay in their place of residence." The County Public Health Order also required that all non-essential businesses "cease all activities."

29.     On March 24, 2020, the County Board of Supervisors adopted an eviction moratorium to prevent the eviction of tenants who owe rent due to COVID-19.

**Estrada's Unlawful Utility Shut-Off**

30.     On or about March 16, 2020, Maria was laid off from the restaurant where she had worked, due to restricted operations and loss of business related to the COVID-19 pandemic.

31.     On March 19, 2020 Maria informed Defendant Estrada that, because she was laid off, she would not have the rent for April. Defendant Estrada responded, "If you are thinking of not paying the coming month, you really should be looking for [another] place because I am going to close up everything [here]." Defendant Estrada also stated "You have until the 8th of the month[;] if I don't receive payment, well I'm sorry, there's

COMPLAINT                                          *Doe, et al v. County of Sacramento, et al.*

nothing more to say."

32.     On or about April 1, 2020, Defendant Estrada told Maria that because she could not pay April rent, she had to leave by April 3. Maria handed to Defendant Estrada a signed form "Tenant Delay of Rent Payment—COVID-19" from "Sacramento Community Development," explaining that she lost income due to a lay-off relating to COVID-19. Defendant Estrada stated that the form was worthless.

33.     On April 1, 2020, Defendant Estrada stated that she would shut off the electricity on April 3 and "close" the Apartment on April 5.

34.     On April 3, 2020, Defendant Estrada shut off the electricity to the Apartment.

35.     On or about April 4, 2020, Maria called Sacramento County Code Enforcement ("Code Enforcement"), an agency of the County, to report that Defendant Estrada shut off her electricity to make her move out.

36.     On April 7, 2020, Code Enforcement contacted Defendant Jagdeep Singh and Defendant Estrada. Defendant Singh communicated with Defendant Estrada.

37.     Defendant Estrada then confronted Maria to complain about her call to Code Enforcement. Defendant Estrada told Maria that the owner, Defendant Singh, required Maria and her family to leave immediately because Code Enforcement was going to come that week. Defendant Estrada threatened to call the police if Maria did not leave. Defendant Estrada later texted Maria that the police were on their way and Maria and her family "really had to leave" that day.

38.     However, Maria did not have anywhere to take her family.

**Estrada Call to Sheriff's Office**

39.     After her threat, Defendant Estrada indeed called 911 to complain that Maria was refusing to move out. Defendant Estrada told the dispatcher that "SMUD [sic]" was coming to inspect, and if the house was still occupied, Defendant Estrada would be fined.

40.     Although Estrada did not report that any crime had been committed, the Sheriff's Office dispatched an armed officer, Deputy Roe, to the Apartment.

COMPLAINT                                                              *Doe, et al v. County of Sacramento, et al.*

41.     Deputy Roe initially spoke with Defendant Estrada, who apparently claimed that she had given Maria a "30 day notice" and that SMUD stated the building was uninhabitable. Deputy Roe neither asked for nor was shown any evidence that would substantiate these false allegations.

42.     Estrada did not allege any crime had been committed. In fact, her allegations constituted a civil dispute that the Sheriff's Office lacked authority to resolve.

43.     Rather than inform Estrada that he lacked authority to resolve her complaint and she should seek legal advice, Deputy Roe proceeded to assist Estrada in coercing Maria to vacate the Apartment.

44.     Deputy Roe, flanked by Estrada, knocked violently on Plaintiffs' door. When Maria answered the door, she told Deputy Roe that she did not speak English. Deputy Roe did not request the assistance of a bilingual officer or interpretation service. Deputy Roe instead insisted that Maria speak English, aggressively demanding that she do so at least four times.

45.     Ultimately, Maria's daughter Clara Doe ("Clara"), who was then in high school, approached the door. Clara was intimidated by Deputy Roe and was not confident in interpreting. Nevertheless, she attempted to help her mother communicate with Deputy Roe.

46.     Deputy Roe told Maria that Estrada wanted her out because she (Maria) paid her rent late. Maria showed Deputy Roe the "Tenant Delay of Rent Payment—COVID-19" form that explained her loss of income. Deputy Roe said, in effect, that the form was worthless, because she did not have a written lease. In fact, whether her lease was written or oral made no difference, and the form constituted notice under the County's eviction moratorium.

47.     Deputy Roe further told Maria that, if she did not leave that same day, "we" would come back to "take [her] out" in a matter of days. Deputy Roe further stated that, after she was "taken out," Estrada would take her to court to make her pay money.

48.     After Deputy Roe had been speaking to Maria in English for some time,

7

Maria was concerned that she was not correctly understanding what he was saying, due to the nervous "translation" by Clara. Maria then called her 21-year-old daughter Olivia Flores ("Olivia") and put her on speakerphone.

49. With Olivia listening on speakerphone, Deputy Roe repeated that Plaintiffs needed to move that same day—by midnight—or else "someone" would come in a matter of days to move them out.

50. Deputy Roe continued to insist that Maria and her family had to leave that day for approximately 30 to 45 minutes, all while flanked by Estrada, who spoke to Deputy Roe in a low voice in English.

51. When Maria did not immediately agree to surrender the Apartment, Deputy Roe demanded to see her identification. Because there was no reason for Deputy Roe to request proof of her identity, Maria was frightened that Deputy Roe would arrest her or seek to question her immigration status. He copied the information from her Mexican identification card. After this, Plaintiffs reasonably feared that Deputy Roe's threat to "take them out" could lead to deportation.

52. During the 30 to 45 minutes that Deputy Roe spent at Maria's door, he never asked her any questions, and he never sought to investigate Estrada's illegal electricity shut-off, which is a crime and which Maria had reported to the County. Afterward, when he reported to the dispatcher, Deputy Roe reported falsely that Estrada "gave [Doe] a 30 day notice" and "SMUD stat[e]d building was uninhabitable"—claims that obviously originated from Estrada and which could have been easily verified as false.

53. Although Deputy Roe had no authority to take any action in Estrada's civil dispute with Maria beyond telling Estrada to seek legal advice, Deputy Roe remained at the Apartment, blocking the door, and continued to intimidate, bully and coerce Maria until Maria told him that she would leave that day.

54. Based on Deputy Roe's intimidation, aggressive attitude, and explicit and implicit threats, Maria understood that she had no choice but to comply with his and Estrada's demand that she and her family move out by midnight—in a matter of hours.

COMPLAINT                                                    *Doe, et al v. County of Sacramento, et al.*

Even though she had little money, she had just lost her job, and she had no place to go in the middle of an emergency shelter-in-place order, Maria told Deputy Roe the only thing that would make him leave.

55.    Plaintiffs scrambled to pack what belongings they could in a matter of hours and arrange for a U-Haul, even while they had nowhere to go. Plaintiffs were rendered homeless. Eventually, they were offered to temporarily double up with another family in a small apartment several miles away.

56.    Plaintiffs remained homeless for an extended period of time. Due to the COVID-19 state of emergency, finding permanent housing was especially difficult at the time that Plaintiffs were dispossessed. Indeed, the Governor had recently ordered all residents of the state to stay at home except for essential jobs, putting the rental market at a stand-still and making it impossible to find employment in restaurant work.

57.    Plaintiffs suffered economic loss as well as lasting psychological and emotional distress as a result of the circumstances of their eviction.

58.    Plaintiffs continue to reside in the County. Maria Doe and Clara Doe work in the County. Plaintiff I.D. is enrolled in school in the County. They fear that any future encounters with the Sheriff's Office will result in similar or worse outcomes due to the Maria's limited English proficiency.

**Lack of Language Access at the Sheriff's Office**

59.    Approximately 32.7% of residents of the County speak a language other than English at home. In particular, approximately 13.8% of County residents—over 210,000 people—speak Spanish at home. Approximately 20.9% of residents of the County are foreign born.

60.    The Apartment is located in Sheriff's Office District 6. In District 6, approximately 50.3% of residents age 5 and older speak a language other than English at home. Approximately 20.9% speak Spanish at home. Approximately 30.7% of District 6 residents are foreign born.

61.    During the relevant time period, the County and the Sheriff's Office served

9

*Doe, et al v. County of Sacramento, et al.*

"a substantial number of non-English-speaking people" within the meaning of the Dymally-Alatorre Bilingual Services Act, Cal. Gov. Code § 7293. In enacting the Bilingual Services Act, the Legislature made a finding that "state and local agency employees frequently are unable to communicate with persons requiring their services because of [a] language barrier. As a consequence, substantial numbers of persons presently are being denied rights and benefits to which they would otherwise be entitled." Cal. Gov. Code § 7291.

62.     During the relevant time period, the County and the Sheriff's Office received federal financial assistance within the meaning of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

63.     Among other federal funding, the County and the Sheriff's Office received financial assistance from the U.S. Department of Justice ("DOJ") and their operations are a "program or activity" within the meaning of the DOJ Title VI implementing regulations, 28 C.F.R. 42.102(d). As stated in DOJ's Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 FR 41455, published June 18, 2002 ("DOJ Recipient LEP Guidance"), the County and the Sheriff's Office "have a responsibility to ensure meaningful access to their programs and activities by persons with limited English proficiency (LEP)."

64.     During the relevant time period, the County and the Sheriff's Office received financial assistance from the State of California within the meaning of Cal. Civ. Code § 11135(a).

65.     During the relevant time period, and to the present, the Sheriff's Office has not implemented any departmental orders, trainings, or policies relating to providing access to LEP persons.

66.     During the relevant time period, and to the present, the Sheriff's Office has not adopted an LEP plan, as recommended by DOJ Recipient LEP Guidance.

COMPLAINT                                                        *Doe, et al v. County of Sacramento, et al.*

**Sheriff Jones**

67.     During his tenure as sheriff, Defendant Jones has made immigration enforcement a centerpiece of his public image and leadership of the Sheriff's Office.

68.     In 2014, Jones published a video on the Sheriff's Office YouTube channel addressed to then-President Barack Obama criticizing the president's failure to deport a sufficient number of undocumented immigrants. In the video, which was picked up by national news outlets, Jones was dressed in Sheriff's Office uniform and sitting at what appears to be his desk at the Sheriff's Office. The video was published approximately one week before President Obama's anticipated announcement of an expansion of the Deferred Action for Childhood Arrivals ("DACA") program and the creation of a new deferred action program for undocumented parents of children who are citizens and legal permanent residents.

69.     In July 2015, Jones appeared on Fox News and stated "I want to enforce federal [immigration] law." He called for federal funding to be cut for "sanctuary cities."

70.     In 2016, Jones ran a high-profile, ultimately unsuccessful congressional campaign calling for stricter immigration enforcement. Jones emphasized that he was running as "Sheriff Scott Jones for U.S. Congress."

71.     In 2017, Jones publicly campaigned against Senate Bill 54 ("the California Values Act"), which barred police agencies like his from assisting federal immigration authorities. In enacting the California Values Act, the Legislature made a finding that the "relationship of trust between California's immigrant community" and police is "threatened" when agencies are "entangled with federal immigration enforcement." Cal. Gov. Code § 7284.2. Jones claimed that the bill would violate federal law and he would be "in a very difficult position to decide" whether he would comply.

72.     In March 2017, Jones requested that the director of Immigration and Customs Enforcement ("ICE"), Thomas D. Homan, travel to Sacramento to help oppose the California Values Act. Jones's invitation resulted in a "community forum" on March 28, 2017 in which Jones appeared side-by-side with the ICE director to show their

COMPLAINT                                                    *Doe, et al v. County of Sacramento, et al.*

solidarity.

73.    On December 18, 2018, Jones spoke at a public hearing by the County Board of Supervisors regarding compliance by the Sheriff's Office with the California Values Act. Jones stated that "I give ICE unfettered access to our jails and our databases."

**Plaintiffs' Timely Claim**

74.    On September 30, 2020, Plaintiffs timely presented a claim against the County and the Sheriff's Office for damages they suffered as a result of the events of April 7, 2020.

75.    On or about February 13, 2021, the County notified Plaintiffs that their claim was rejected by operation of law.

76.    This action is filed within six (6) months of the County's notice that the claim was rejected.

## FIRST CAUSE OF ACTION

### Against Defendants Roe, Estrada, Singh, and Giri
### Wrongful Eviction; Conspiracy to Wrongfully Evict

77.    Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

78.    Defendant Roe's threat to return to the Apartment to "take [Plaintiffs] out" constituted a threat of force or violence to dispossess Plaintiffs from the Apartment so that Defendant Estrada would take possession.

79.    Defendant Estrada was aware of Defendant Roe's actions and intended them to happen.

80.    Defendants Singh and Giri were aware of Defendant Estrada's plan to dispossess Plaintiffs on April 7, 2020, and intended for it to happen.

81.    Defendant Estrada's threat to call the police if Plaintiffs did not immediately vacate was an implied threat to use force or violence to take possession of the Apartment.

82.    Plaintiffs were in peaceable possession of the Apartment before they were

12

COMPLAINT                                                    *Doe, et al v. County of Sacramento, et al.*

forced out on April 7, 2020.

83.     Defendants Roe, Estrada, Singh, and Giri are liable for wrongful eviction under California law.

84.     As a result of Defendants' actions, Plaintiffs suffered injuries and damages.

## SECOND CAUSE OF ACTION

### Against Deputy Roe

### Due Process Clause, U.S. Const., 14th Am.; 42 U.S.C. § 1983

85.     Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

86.     As to all actions and omissions relevant to this action, Deputy Roe was acting under color of law.

87.     Plaintiffs' possession of the Apartment up to April 7, 2020 was a property interest protected by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

88.     Through his actions and omissions in the dispossession of Plaintiffs, Deputy Roe deprived Plaintiffs of their property interest in the Apartment without due process of law.

89.     Plaintiffs' dispossession was caused by and was the foreseeable consequence of Deputy Roe's actions and omissions.

## THIRD CAUSE OF ACTION

### Against the County; Sheriff Jones; and the Sheriff's Office

### Failure to Adopt Language Access Policy; 42 U.S.C. § 1983; U.S. Const., 14th Am.

90.     Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

91.     The actions and omissions of Defendant Roe deprived Plaintiffs of their rights under the laws of the United States.

92.     Defendant Roe was acting in the performance of his official duties.

93.     The County, Defendant Jones, and the Sheriff's Office ("the Municipal

13

COMPLAINT                                                    *Doe, et al v. County of Sacramento, et al.*

Defendants") were actually or constructively aware of the requirement under Title VI of the Civil Rights Act that they ensure they provide meaningful access to Sheriff's Office services to LEP persons, such as Maria.

94.     At the relevant time, the Sheriff's Office, though empowered to do so, failed to adopt a written policy or order regarding its officers' interaction with members of the public who are limited English proficient.

95.     Limited English proficiency is a stand-in for being an immigrant, because most LEP persons are immigrants.

96.     In the absence of a written policy on language access at the Sheriff's Office, Defendant Jones's public statements in favor of stricter immigration enforcement by local police officers comprised the effective "policy" of Municipal Defendants on Sheriff's Office officers interacting with immigrants, including LEP persons.

97.     The policies of the Municipal Defendants were not adequate to prevent violations of the law by Sheriff's Office officers when interacting with members of the public who are limited English proficient.

98.     Given the large number of LEP residents in the County, the inadequate policy on language access created a substantial risk that the rights of LEP persons would be violated when interacting with Sheriff's Office officers.

99.     The substantial risk that the rights of LEP persons would be violated was and is heightened by Sheriff Jones's consistent messaging in favor of strict immigration enforcement and immigration enforcement by local officers.

100.    The Municipal Defendants were deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of the law by Sheriff's Office officers when interacting with members of the public who are limited English proficient.

101.    The failure of the Municipal Defendants to prevent such violations caused the deprivation of Plaintiffs' rights by Defendant Roe, in that the inadequate policy on language access played a substantial part in causing Plaintiffs' damages.

COMPLAINT                                                    *Doe, et al v. County of Sacramento, et al.*

## FOURTH CAUSE OF ACTION

**Against the County; Sheriff Jones; and the Sheriff's Office**

**Failure to Train; 42 U.S.C. § 1983; U.S. Const., 14th Am.**

102.   Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

103.   The actions and omissions of Defendant Roe deprived Plaintiffs of their rights under the laws of the United States.

104.   At the relevant time, the Sheriff's Office did not provide any training to its officers on interacting with members of the public who are limited English proficient.

105.   At the relevant time, the training policies of the Municipal Defendants were not adequate to train officers to handle the usual and recurring situations with which they must deal, namely, interacting with members of the public who are limited English proficient.

106.   Given the frequency with which Sheriff's Office officers were certain to interact with LEP persons in the performance of their duties, it was obvious that officers would be likely to violate LEP persons' constitutional rights in the absence of any training. If a member of the public is unable to communicate with a law enforcement officer due to limited English proficiency and lack of interpretation services, then that person cannot effectively or accurately request assistance, respond to commands, or provide a statement.

107.   The Municipal Defendants were deliberately indifferent to the substantial risk that its training was inadequate to prevent violations of the law by Sheriff's Office officers when interacting with members of the public who are immigrants and/or limited English proficient.

108.   The failure of the Municipal Defendants to provide adequate training played a substantial part in bringing about or actually causing the damages suffered by Plaintiffs through their dispossession from the Apartment.

COMPLAINT                                                    *Doe, et al v. County of Sacramento, et al.*

## FIFTH CAUSE OF ACTION

### Against the County, Jones, and the Sheriff's Office

### Intentional Discrimination, Title VI of the Civil Rights Act of 1964; 42 U.S.C. § 1983

109.   Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

110.   The Municipal Defendants are recipients of federal financial assistance from DOJ and are subject to Title VI of the Civil Rights Act of 1964 and DOJ implementing regulations.

111.   The Municipal Defendants' custom, practice, and policy choices not to adopt a written language access policy or train Sheriff's Office officers were the product of intentional discrimination against LEP immigrants based on national origin.

112.   The Municipal Defendants intent to discriminate is shown by facts including the following:

  a.   The Municipal Defendants' actual or constructive knowledge of the longstanding requirements of Title VI and their written assurance to DOJ that they would be in compliance;

  b.   The Municipal Defendants' actual or constructive knowledge of the requirements of the Dymally-Alatorre Bilingual Services Act;

  c.   The statements and policies of Defendant Jones, on behalf of or ratified by the County and the Sheriff's Office, relating to enforcement by Sheriff's Office officers of federal immigration regulations, policies which facially discriminate based on national origin;

  d.   The failure to develop and implement a language access policy; and

  e.   The failure to train officers to handle the usual and recurring situations requiring interaction with members of the public who are limited English proficient.

16

113.   The Municipal Defendants' policy, practice, or custom of failing to take steps to provide meaningful access to LEP persons interacting with the Sheriff's Office caused Plaintiffs' injuries and damages.

## SIXTH CAUSE OF ACTION

### Against All Defendants

### Bane Act, Cal. Civ. Code § 52.1

114.   Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

115.   Defendants, by their actions and omissions, employed threats, intimidation, and coercion to interfere with Plaintiffs enjoyment of their rights under law, including their right to continue in possession of the Apartment.

116.   By virtue of Defendants' violation of Cal. Civ. Code § 52.1, Plaintiffs are entitled to damages under Cal. Civ. Code § 52 and injunctive relief against the Municipal Defendants.

## SEVENTH CAUSE OF ACTION

### Against Defendant Roe

### Unruh Act, Cal. Civ. Code § 51

117.   Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

118.   Defendant Roe explicitly discriminated against Plaintiff Maria Doe based on her primary language by refusing to provide interpretation services and instead demanding that she speak English, a language which she could not speak or understand fluently.

119.   Defendant Roe acted on behalf of Defendants Estrada, Singh, and Giri in the dispossession of Plaintiffs from the Apartment.

120.   The rental of the Apartment constituted a "business establishment" within the meaning of Cal. Civ. Code § 51.

121.   Defendant Roe is liable for damages under Cal. Civ. Code § 52(a).

17

COMPLAINT                                                                              *Doe, et al v. County of Sacramento, et al.*

## EIGHTH CAUSE OF ACTION

### Against the County, Sheriff's Office, and Jones

### Unlawful Discrimination, Cal. Gov. Code §§ 11135, 11139

122.    Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

123.    During the relevant time period, the County and the Sheriff's Office received financial assistance from the State of California to support their law enforcement services.

124.    Limited English proficiency is essentially a stand-in for a person's status as an immigrant and thus their national origin.

125.    Furthermore, the language access violations alleged in this Complaint—demanding that Plaintiff Doe "speak English," failing to adopt a language access policy, and failing to train officers on language access—have a disparate impact on immigrants, and in particular on Latinos, who make up the majority of LEP persons in the County.

126.    Through the above-described actions and omissions, the Municipal Defendants unlawfully denied Plaintiffs full and equal access to the Sheriff's Office services based on Plaintiffs' actual or perceived national origin and ethnic identification.

127.    In addition, Plaintiffs were subjected to discrimination in the provision of Sheriff's Office services on the basis of Plaintiffs' actual or perceived national origin and ethnic identification.

128.    The Municipal Defendants' policy and training violations are continuing and ongoing.

129.    Plaintiffs are entitled to injunctive relief to correct the Municipal Defendants' policy and training violations.

## NINTH CAUSE OF ACTION

### Against the County, Sheriff's Office, and Jones

### Mandamus; Cal. Code Civ. Pro. § 1085

18

COMPLAINT                                                    *Doe, et al v. County of Sacramento, et al.*

130.   Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

131.   The Municipal Defendants have a duty under Title VI of the Civil Rights Act of 1964 and the DOJ implementing regulations to ensure that the Municipal Defendants provide meaningful access to their services to LEP persons.

132.   The Municipal Defendants have a duty under the Dymally-Alatorre Bilingual Services Act to ensure that they provide services in the language of non-English-speaking persons.

133.   The Municipal Defendants have not taken steps to comply with their duties to ensure LEP persons can access the services of the Sheriff's Office.

134.   In particular, the Municipal Defendants have not adopted a written language access policy applicable to the Sheriff's Office, and they have not trained officers on how to provide services to LEP persons.

135.   The Municipal Defendants' failure to take steps to ensure access to LEP persons is an abuse of discretion, arbitrary and capricious, and in derogation of applicable legal standards.

136.   Plaintiffs are beneficially interested in having the Municipal Defendants take steps to ensure access to LEP persons, as Plaintiffs are members of the public with an interest in the Municipal Defendants compliance with their legal obligations.

137.   There are no adequate remedies at law.

138.   The Court should issue a writ of mandate ordering the Municipal Defendants to take meaningful steps to ensure access to their services to LEP persons.

## TENTH CAUSE OF ACTION

### Against the County, Sheriff's Office, Jones, and Roe

### Negligence

139.   Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

140.   Defendant Roe and the Municipal Defendants owed Plaintiffs a duty to

19

COMPLAINT                                          *Doe, et al v. County of Sacramento, et al.*

exercise due care in the provision of law enforcement services.

141.   Through his actions and omissions on April 7, 2020, Defendant Roe failed to exercise due care and breached his duty to Plaintiffs.

142.   In particular, Defendant Roe failed to meet the standard of care of a reasonable police officer under the circumstances by his actions and omissions, including but not limited to:

    a.   Confronting Plaintiffs with Defendant Estrada, rather than informing Defendant Estrada that he lacked authority to intervene and directing her to seek legal advice;

    b.   Demanding Plaintiff Maria Doe speak English, rather than securing the assistance of a bilingual officer or interpretation service;

    c.   Failing to ask any questions of Plaintiffs or to investigate the basis for Plaintiffs' complaint to Code Enforcement, namely, that Defendant Estrada illegally shut off the electricity in order to force Plaintiffs to surrender the Apartment;

    d.   Wrongly stating that Plaintiffs had to vacate in a short amount of time;

    e.   Threatening that someone would "take [Plaintiffs] out" in the next few days; and

    f.   Wrongly stating that Plaintiff Maria Doe's written notice of COVID-19 rent delay was invalid because she did not have a written lease.

143.   Defendant Roe's breach was a proximate cause of Plaintiffs' damages and injuries as a result of their dispossession from the Apartment.

144.   Defendant Roe was acting in the scope of his employment by the Municipal Defendants when he caused Plaintiffs to be harmed.

145.   Defendant Roe's actions and omissions were malicious and despicable, in callous and reckless disregard of Plaintiffs' rights.

146.   Defendant Roe and the Municipal Defendants are liable for Plaintiffs' damages as well as punitive damages.

COMPLAINT                                                                 *Doe, et al v. County of Sacramento, et al.*

## ELEVENTH CAUSE OF ACTION

### Against Estrada, Singh, and Giri

### Retaliatory Eviction, Cal. Civ. Code § 1942.5

147.   Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

148.   On April 4, 2020, Plaintiffs complained to Code Enforcement that Defendant Estrada had cut off their electricity.

149.   Defendant Estrada, acting on her own behalf and on behalf of Defendants Singh and Giri, caused Plaintiffs to vacate the Apartment involuntarily on April 7, 2020.

150.   Defendants Estrada, Singh, and Giri forced Plaintiffs to leave the Apartment in order to avoid an inspection by Code Enforcement and the potential for fines and costly orders to correct violations at the Apartment.

151.   Plaintiffs were forced to leave within 180 days of their complaint to Code Enforcement.

152.   As of April 7, 2020, Plaintiffs were not in default in rent; indeed, Defendant Estrada had demanded that Plaintiffs' rent be paid by April 8.

153.   As a result of this retaliatory eviction, Defendants Estrada, Singh, and Giri are liable for Plaintiffs' damages, punitive damages, and attorney fees.

## TWELFTH CAUSE OF ACTION

### Against Estrada

### Breach of the Warranty of Habitability

154.   Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

155.   Plaintiff Maria Doe had a lease with Defendant Estrada for the occupancy of the Apartment. Implied in every such agreement, written or oral, is a warranty of habitability.

156.   During Plaintiffs' occupancy, the Apartment was unfit for human

21

occupancy in that it substantially failed to comply with applicable building and health and safety codes standards that materially affected the health and safety of Plaintiffs.

157.   Defendant Estrada was aware of the defective and dangerous conditions as alleged and did not repair them.

158.   Plaintiffs' dwelling as it existed in its defective and dangerous conditions had no rental value.

159.   By her failure to provide habitable premises, and to repair defective and dangerous conditions within a reasonable time, or at all, Defendant Estrada breached the implied warranty of habitability.  As a proximate result of Defendant's breach, Plaintiffs sustained damages in the full amount of rent they paid during their tenancy.

160.   Plaintiffs suffered discomfort and annoyance as a direct and proximate result of Defendant Estrada's failure to correct the defective conditions, all to their general damage in an amount to be determined at trial.

161.   Defendant Estrada's failure to correct these defective conditions was knowing, intentional and willful and was done with full knowledge of the discomfort and annoyance that their failure would cause Plaintiffs.

162.   Defendant Estrada has been guilty of oppression, fraud, or malice, in that her conduct was intended to cause injury to Plaintiffs or was despicable conduct carried out with a willful and conscious disregard of the rights or safety of others.  Such despicable conduct subjected Plaintiffs to cruel and unjust hardship in conscious disregard of the Plaintiffs' rights.  In addition, Defendant Estrada's conduct included an intentional misrepresentation, deceit or concealment of one or more material facts known to Defendant Estrada, with the intention on the part of each Defendant of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs are therefore entitled to punitive damages in an amount to be determined at trial

### THIRTEENTH CAUSE OF ACTION

### Against Estrada, Singh, and Giri

22

COMPLAINT                                                    *Doe, et al v. County of Sacramento, et al.*

**Untenantability, Cal. Civ. Code §§ 1941, 1941.1**

163.   Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

164.   Defendants Estrada, Singh, and Giri failed to put premises intended for human habitation and actually inhabited by Plaintiffs into a condition fit for human occupation, and/or failed to repair all subsequent dilapidation which rendered the premises untenantable.

165.   The premises occupied by Plaintiffs was untenantable, pursuant to Civil Code Section 1941.1 in that they substantially lacked the conditions enumerated therein.

166.   Plaintiffs is entitled to actual damages as a result of each of Defendants' unlawful acts described herein in an amount to be determined at trial.

167.   Defendants Estrada, Singh, and Giri in doing the foregoing unlawful acts, acted wantonly, willfully, maliciously and without regard for the rights, health, or feelings of Plaintiffs, and with the intent design, and purpose to injure and oppress Plaintiffs.  Plaintiffs, therefore, is entitled to an award of exemplary and punitive damages

## **FOURTEENTH CAUSE OF ACTION**

### **Against Estrada, Singh, and Giri**

### **Negligence**

168.   Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

169.   Defendants Estrada, Singh, and Giri owed a duty, as owners or lessors of real property, to exercise due care in the management of his or her person and property to avoid foreseeable injury to others.

170.   In addition, Defendants Estrada, Singh, and Giri owed a statutory duty of care to Plaintiffs arising from, but not limited to, California Civil Code Sections 1714, 1941, and 1941.1, Health and Safety Code Section 17920.3 *et seq.,* the Uniform Fire Code and Uniform Housing Code, all of which were in full force and effect at the time

COMPLAINT                                                           *Doe, et al v. County of Sacramento, et al.*

of the violations alleged herein.

171.    Defendants Estrada, Singh, and Giri failed to exercise due care in the management of his or her property, and acted negligently in each such act and omission.

172.    Plaintiffs belong to the class of persons which Civil Code Section 1941 et seq. was designed to protect and Plaintiffs' injuries resulted from occurrences the nature of which the statutes cited above were designed to prevent.

173.    Plaintiffs, as a direct and proximate result of Defendants' failure to use due care and diligence to maintain the premises in habitable condition, has suffered injury, inconvenience and embarrassment in an amount to be proved at trial.

174.    Defendants Estrada, Singh, and Giri's actions were malicious and despicable, in callous and reckless disregard of the rights of Plaintiffs, and therefore, Plaintiffs are entitled to punitive damages in an amount to be proved at trial.

## FIFTEENTH CAUSE OF ACTION

### Against Estrada

### Breach of the Covenant of Good Faith and Fair Dealing

175.    Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

176.    Defendant Estrada's failed to provide habitable housing while at the same time demanding rent be paid with full knowledge that the premises were unsafe and uninhabitable.

177.    Defendant's above described acts breached the covenant of good faith and fair dealing that is implied by operation of law into every contract including the contract between Defendant and Plaintiff Maria Doe.

178.    Plaintiff, as a direct and proximate result of Defendant's conduct, has suffered economic damages through the payment of excessive rent for uninhabitable premises and through the loss and/or damage to personal property as the result of the condition of the premises.  Accordingly, Plaintiff is entitled to compensatory damages in amounts to be determined at trial.

24

179.   Plaintiffs suffered mental stress, emotional distress, discomfort, annoyance and anxiety and/or physical pain and injury as a direct and proximate result of the conditions which Defendant caused to exist in her home, all to Plaintiff's damage in an amount to be determined at trial.

## SIXTEENTH CAUSE OF ACTION

### Against Estrada

### Breach of the Covenant of Quiet Enjoyment

180.   Plaintiffs repeat, reassert, and incorporate all the above allegations as if set forth herein.

181.   Implied in the rental agreement between Defendant Estrada and Plaintiff Maria Doe was a covenant that Defendants will not interfere with Plaintiff's quiet enjoyment of the premises during the term of the tenancy.

182.   Defendant breached the implied covenant of quiet enjoyment through her conduct as described above, including but not limited to, failure and refusal to repair the unsafe, unsanitary, and uninhabitable condition of the dwelling and to maintain the premises in a habitable condition; shutting off the electricity; making false complaints to the Sheriff's Office; and wrongfully evicting Plaintiffs.

183.   The value of the leasehold held by Plaintiffs was diminished as a direct and proximate result of the Defendant's conduct, damaging Plaintiffs in the amount equal to the rental payment Plaintiffs paid to Defendant, or in an amount to be determined at trial.

184.   Plaintiffs suffered mental stress, emotional stress, discomfort, annoyance, anxiety, property damage, and/or physical pain and injury as a direct and proximate result of the Defendant's conduct, with Plaintiffs' damages in an amount to be determined at trial.

185.   Defendant has been guilty of oppression, fraud, or malice, in that her conduct was intended to cause injury to Plaintiffs or was despicable conduct carried out with a willful and conscious disregard of the rights or safety of others.  Such despicable

25

conduct subjected Plaintiffs to cruel and unjust hardship in conscious disregard of the Plaintiffs' rights.  In addition, Defendant's conduct included an intentional misrepresentation, deceit or concealment of one or more material facts known to the Defendant, with the intention of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury.  The conduct of the Defendant was intentional, malicious, and oppressive, entitling Plaintiff to recover punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a)    Granting declaratory judgment in favor of Plaintiffs that the Municipal Defendants' policies, practices, and training relating to communication with LEP persons violate state and federal laws and regulations and the Constitution of the United States.

(b)    Granting declaratory judgment in favor of Plaintiffs that the Municipal Defendants have engaged in intentional discrimination on the basis of race, ethnicity, ancestry, and/or national origin against Plaintiffs and other LEP persons by refusing to adopt and implement a language access policy or to train officers on how to communicate with LEP persons.

(c)    Enjoining the Municipal Defendants from continuing their unlawful policies and practices, and in particular, enjoining the Municipal Defendants from failing to implement a compliant and effective language access policy and from failing to train officers on communication with LEP persons.

(d)    Issuing a writ of mandate, pursuant to Cal. Code Civ. Proc. § 1085, that the Municipal Defendants take meaningful steps to comply with their duty to provide access to LEP persons.

(e)    Awarding judgment in favor of Plaintiffs and against all Defendants for damages relating to Plaintiffs' wrongful eviction and displacement,

26

COMPLAINT                                          *Doe, et al v. County of Sacramento, et al.*

including emotional distress and punitive damages.

(f)    Awarding judgment in favor of Plaintiffs and against Estrada, Singh, and Giri for damages relating to the uninhabitable conditions of the Apartment and retaliatory eviction, including punitive damages.

(g)    Awarding judgment against all Defendants for Plaintiffs' attorney fees.

(h)    Casting all costs upon Defendants; and

(i)    Awarding Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Date: August 9, 2021        Respectfully submitted,

CALIFORNIA RURAL LEGAL ASSISTANCE FOUNDATION

_____/s/  Ezra Kautz_____
*Attorney for Plaintiffs*

COMPLAINT                    *Doe, et al v. County of Sacramento, et al.*