UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DOE, a fictitious name; CLARA DOE, a fictitious name, and "I.D.," a fictitious name, by and through her next friend, MARIA DOE,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SACRAMENTO; SACRAMENTO COUNTY SHERIFF'S OFFICE; DARRYL RODERICK; JAGDEEP SINGH, individually and as administrator of the Estate of Sushma Giri; V & N ASSOCIATES, LLC; and ALIDA ESTRADA,<br><br>Defendants. | No. 2:21-cv-01438-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiffs allege they were unlawfully evicted during the COVID-19 pandemic from an apartment in Sacramento managed by Defendant Alida Estrada and owned by Defendant Jagdeep Singh. Plaintiffs, a single mother and her two children, allege that Defendant Darryl Roderick, a Sacramento County Sheriff's Deputy, wrongfully assisted Defendant Estrada in effectuating their eviction. Plaintiffs' currently operative pleading, the Second Amended Complaint ("SAC"), contains sixteen different causes of action asserting, in addition to wrongful eviction, constitutional

1

deprivations, violations of Title VI of the Civil Rights Act 1964, 42 U.S.C. §§ 2000d, et seq. ("Title VI") and various state statutes as well as common law claims. In addition, Plaintiffs assert two different claims directed against Defendants County of Sacramento and the Sacramento County Sheriff's Office alleging that those entities were responsible for the acts and omissions of Deputy Roderick because said Defendants' own conduct and policies caused Roderick's wrongful behavior.

Presently before the Court is a Motion to Dismiss (ECF No. 17) brought on behalf of the County, the Sheriff's Department and Deputy Roderick (collectively "Defendants" unless otherwise indicated) pursuant to Federal Rule of Civil Procedure 12(b)(6), on grounds that Plaintiffs fail to state viable claims as to certain of the causes of action asserted in the SAC.[1] As set forth below, that Motion is GRANTED in part and DENIED in part.

## BACKGROUND[2]

Plaintiff Maria Doe,[3] an immigrant from Mexico who resides in Sacramento County, entered into an oral lease in November 2019 with Defendant Estrada to rent an apartment situated behind the garage of the main house located at 5973 Vista Avenue in Sacramento, California ("the apartment"). On or about November 6, 2019, Maria moved into the apartment with three of her children: Plaintiff Clara Doe, a high school student,

---

[1] Although Defendants' Motion was originally filed with respect to the First Amended Complaint ("FAC"), ECF No. 14, Plaintiffs since obtained permission to file the SAC by way of unopposed motion (ECF No. 26). The sole purpose of the SAC, which did not change the paragraph numbering previously employed by the FAC, was to address logistical changes made necessary by the death of one of the owners of the property, Sushma Giri. Because the parties represented that the amendment was "unrelated to the substance of the pending motion to dismiss", (ECF No. 26, 2:10-11), and because the paragraph sequence of the SAC remains identical, to avoid confusion the Court will cite to the currently operative SAC.

[2] Unless otherwise indicated, the facts set forth in this section are taken, at times verbatim, from the allegations contained in Plaintiffs' SAC, ECF No. 32.

[3] Plaintiff Maria Doe, along with her children, has elected to proceed with a pseudonym in this litigation due to concern that her immigration status could be adversely affected were her true identity to be revealed.

2

Plaintiff I.D., who was 10 years old, and Olivia, who moved out of the unit after about a month.

Soon after the Doe family moved into the apartment, they became aware of numerous maintenance issues, including heating and electrical malfunctions as well as insect infestation. Those problems were largely unaddressed.

In March of 2020, after California Governor Gavin Newsom declared a state of emergency due to the spread of COVID-19, he issued various directives which reduced the capacity and function of the restaurant industry where Maria worked. When Maria was ultimately laid off on March 16, 2020, from her restaurant job due to such restricted operations, Maria told Defendant Estrada that she would be unable to pay rent for the month of April because she had lost her job. Maria claims Estrada told her they would have to move by April 8 if the $1,100 monthly rent payment was not made.

On or about April 1, 2020, Estrada told Maria that because she could not pay the April rent she would have to move by April 3, even sooner than Estrada had previously reported. In response, Maria handed Estrada a signed form entitled "Tenant Delay of Rent Payment—COVID 19" that allegedly had been furnished to her by "Sacramento County Development." Although the form attested to the fact that because Maria had lost income due to a lay-off relating to COVID-19, she was protected from eviction, Estrada allegedly told her the form was "worthless" and proceeded to turn off the electricity to Plaintiffs' rental unit two days later. SAC, ¶¶ 31, 33.

Maria called Sacramento County Code Enforcement the next day to complain that Estrada had turned off the electricity, and she was subsequently confronted by Estrada on or about April 7, 2020. Estrada told Maria that she had to leave the apartment that day because the police would be "on their way" if she did not do so. Estrada indeed proceeded to call 911 on grounds that Maria was refusing to move. In response, the Sacramento County Sheriff's Office dispatched Defendant Roderick to the apartment.

Deputy Roderick initially spoke to Estrada, who untruthfully claimed both that Maria already been given a "30-day notice" and that the electrical provider, SMUD, had

deemed the apartment uninhabitable. Roderick did not ask for any evidence to substantiate these false allegations and proceeded to assist Estrada in getting Maria and her family to leave. When Maria told Roderick she did not speak English, rather than request the assistance of a bilingual officer or interpretation service, Roderick simply insisted that Maria speak English, aggressively demanding that she do so at least four times. Ultimately Plaintiff Clara Doe, who was then in high school, approached the door and felt intimidated by Roderick to help her mother communicate with the Deputy.

Maria claims she showed Roderick the above-described form that explained her entitlement not to be evicted because she had lost her income due to the pandemic. According to Maria, Roderick's response, in effect, was that the form was worthless because she did not have a written lease—even though that distinction made no difference and presentation of the form constituted proper notice of the County of Sacramento's eviction moratorium. Maria goes on to claim that Roderick told her that if she did not leave the apartment that same day, she would be "taken out" in a matter of days and taken to court. Id. at ¶ 46.

Concerned that she was not correctly understanding Roderick because of Clara's "nervous" interpretation, Maria decided to call her 21-year-old daughter Oliva and have her translate by speakerphone. While the SAC alleges that Olivia was also reluctant to serve as interpreter because she was not physically present, she allegedly felt she had no choice but to help her mother communicate with Roderick, who then reiterated that they had to move out that same day by midnight. When Maria did not immediately agree, Roderick demanded to see her identification, and copied the information from her Mexican identification card. This caused Maria to become frightened that Roderick would arrest her or seek to question her immigration status.

The SAC alleges that Roderick never attempted to investigate Estrada's improper shut-off of electricity to the apartment or sought to verify Estrada's false claim that Maria had been given a 30-day notice and that SMUD had determined the apartment to be uninhabitable. Instead, Roderick blocked the door to the apartment and continued "to

intimidate, bully and coerce Maria until she told him she would leave that day." Id. at ¶ 43. Consequently, although Maria had little money, had just lost her job, and had no place to go, she packed up within a matter of hours and became homeless for an extended period of time until she and her children were able to temporarily move in with another family in a small apartment several miles away.

In addition to claims stemming directly from their wrongful eviction from the apartment, the SAC alleges that Defendant Roderick's repeated demands that Maria, a non-English speaker, simply "speak English," together with the fact that his intimidation in that regard resulted in Maria enlisting her minor daughter to translate as opposed to a qualified translator, violated Title VI's prohibition against discriminating against Limited English Proficient ("LEP") persons on the basis of their national origin. See SAC at ¶ 65, citing 67 FR 41455, published June 18, 2002 (U.S. Department of Justice Recipient LEP Guidance). That failure, according to the SAC, shirks the responsibility of Defendants County of Sacramento and its Sheriff's Office "to ensure meaningful access to their programs and activities by persons with limited English proficiency." Id. at ¶ 66. This is particularly important in Sacramento County where some 32.7 percent of residents do not speak English at home, with approximately 13.8 percent of the total being Spanish speakers. Id. at ¶ 61.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

5

47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

### A.     Standing

Defendants allege that because neither of Maria's children, Plaintiff Clara or I.D., had a property interest in the apartment they lack Article III standing to pursue claims in this lawsuit. Defendants further claim that because Clara spoke English in any event, she has no standing to assert any injury arising from the lack of LEP access. Finally, with respect to Plaintiff I.D., the County argues that there are no allegations with respect to any LEP shortcoming at all.

The County correctly points out that to establish Article III standing, a plaintiff must show: (1) that he or she suffered an injury in fact which is both concrete and actual or imminent; (2) that the injury is caused by the defendant's conduct; and (3) that it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The County nonetheless construes Plaintiffs' claims too narrowly. First, the SAC sufficiently pleads injury to the entire family, not just Maria, as a result of being evicted, as to which the LEP violations played a role. SAC, ¶¶ 57-60. Maria's children had a property interest through their mother to continue occupying the premises. See Marquez-Luque v.

1  Marquez, 192 Cal. App. 3d 1513, 1518 (1987) (son had a right as a tenant at will to
2  continue occupying his father's home because his residency was consensual and for an
3  indefinite period even though there was no rental obligation).  As such, they could not be
4  removed without the legal process attendant to that right.  Id.  Second, Defendant
5  Roderick's alleged intimidation of Maria in demanding she speak English caused her
6  minor daughter Clara to feel she had no choice but to translate, which also may
7  constitute an LEP injury.

   Defendants' standing argument accordingly fails.

   **B.     Section 1983 Due Process Claim against Defendant Roderick**

   Plaintiffs' Second Cause of Action, as pleaded against Defendant Roderick, asserts that he deprived them of their property interest in the apartment without due process of law.  Plaintiffs accordingly argue that they are entitled to bring a § 1983 claim under the Due Process Clause of the Fourteenth Amendment.

   Roderick moves to dismiss on grounds that no cognizable claim against him has been presented.  First, to the extent that claim is premised on Maria's children lacking any property interest whatsoever to which due process can attach, that argument has already been rejected as set forth above.  Second, while Roderick alleges that mere "threats" on his part absent forcible removal is not actionable under § 1983, that argument is also misplaced under the circumstances of this matter.  In Harris v. City of Roseburg, 664 F.2d 1121 (9th Cir. 1981), the Ninth Circuit found that a § 1983 due process violation exists not when an officer assists in repossession, but also when he or she "so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession."  Id. at 1127.  Despite the factual differences between Harris and the case at bar (repossession of a vehicle as opposed to the dispossession of an apartment through eviction), the Court believes that Harris' logic is equally applicable here and supports the viability of the Second Cause of Action.

27  ///
28  ///

**C.     Viability of <u>Monell</u> Claims against County and Sheriff's Department**

In their Third Cause of Action, Plaintiffs allege that Defendants County and the Sheriff's Department (the "Municipal Defendants") are liable for Defendant Roderick's failure to accord the appropriate language access services to Maria, as a LEP person. Plaintiffs claim that the policies of the Municipal Defendants are not adequate to prevent violations in this regard by officers like Defendant Roderick when interacting with members of the public who lack English proficiency.  According to Plaintiffs, not only is there no "written policy on language access at the Sheriff's Office," Sheriff Scott Jones' "public statements in favor of stricter immigration enforcement by local police officers comprised the effective 'policy' of Municipal Defendants on Sheriff's Office officers interacting with immigrants, including LEP persons." SAC, ¶ 102.  Similarly, the Fourth Cause of Action also alleges that Defendants County and the Sheriff's Department are liable for Defendant Roderick's failure to recognize Plaintiffs' rights under the protections afforded to those lacking English proficiency, because "the training policies of the Municipal Defendants were not adequate to train officers to handle the usual and recurring situations with which they must deal, namely, interacting with members of the public who are limited English proficient." SAC, ¶ 113.  Given the failures identified in both causes of action, Plaintiffs allege that the County and the Sheriff's Department are responsible for Roderick's actions given their own independent custom/practices under the rationale recognized by the Supreme Court in <u>Monell v. Dept. of Social Services of the City of New York</u>, 436 U.S. 658 (1978).  Both causes of action assert that the Municipal Defendants are accordingly themselves liable for Defendant Roderick's alleged deprivations of due process under the Fourteenth Amendment.

To state a viable <u>Monell</u> claim, Plaintiffs must identify not only a constitutional deprivation, but a policy (or entrenched custom that amounts to same) that is both "deliberately indifferent" to Plaintiffs' right and constitutes the "moving force" behind the constitutional violation itself. <u>Anderson v. Warner</u>, 451 F.3d 1063, 1070 (9th Cir. 2006). This requires considerably more proof than a single incident in order to establish both

9

fault on the part of a municipal defendant as well as the requisite causal connection between the alleged "policy" and the constitutional deprivation.  McMillian v. Monroe County, 520 U.S. 781, 823-24 (1997).

Here, aside from citing statistics about the prevalence of non-English speakers in Sacramento County and arguing that Sheriff Jones "has made immigration enforcement a centerpiece of his public image and leadership of the Sheriff's Office" (SAC, ¶ 71), the SAC contains little detail as to what the Municipal Defendants' policy was as to LEP speakers beyond the assertion that there was not one, as well as Sheriff Jones' own views on immigration enforcement which are of questionable relevance to the issue of whether appropriate language access services are provided.  Nor does the SAC offer any specifics as to how training as to those amorphous policies was lacking.  In addition, beyond the single instance underlying this particular lawsuit, no other similar examples of injury caused by Defendants' shortcomings are alleged.  Because the Court concludes that this is insufficient to state a viable claim, Defendants' Motion to Dismiss the Third and Fourth Causes of Action are granted, with leave to amend.

### D. Title VI Claim

In addition to the Monell claims discussed above, Plaintiffs also assert in their Fifth Cause of Action that because both Municipal Defendants are the recipients of federal funding, they are independently liable under Title VI, which prohibits discrimination on the basis of race, color or national origin in any "program or activity" that receives federal financial assistance.  Id. at ¶¶ 117-20.[4]  According to Plaintiffs, Defendants' failure to adopt an adequate language access policy for LEP persons constitutes discrimination against Plaintiffs on the basis of their national origin.[5]

---

[4] In addition to alleging a Title VI violation with respect to having received federal funds, the Fifth Cause of Action also appears to assert that Defendants violated Title VI's state counterpart, the Dymally-Alatorre Bilingual Services Act, California Government Code §§ 7299, et seq., which prohibits discrimination by entities receiving state funds.  See SAC, ¶ 121b.  Defendants, however, do not move to dismiss the Fifth Cause of Action to the extent it asserts a § 7299 claim.

[5] Plaintiffs have filed a Request for Judicial Notice (ECF No. 21), pursuant to Federal Rule of Evidence 201, as to Department of Justice guidelines regarding Title VI's protection against national original discrimination affecting LEP persons.  That request is unopposed and is accordingly GRANTED.

Defendants argue that Title VI is inapplicable because neither the County or Sheriff fit within the definition of a "program or activity" for Title VI purposes.

Importantly, Title VI's definition of "program or activity' sweeps broadly to include "all the operations of [] a department, agency, special purpose district, or other instrumentality of a State or local government; or [] the entity of such State or a local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government." 42 U.S.C. § 2000d-4a(1)(A)-(B). This means, according to the Ninth Circuit, that "if any part of a listed entity receives funds, the entire entity is covered by Title VI." Ass'n of Mexican-American Educators v. State of Cal., 195 F.3d 465, 474-74 (9th Cir. 1999); rev'd in part on reh'g en banc on other grounds, 231 F.3d 572 (9th Cir. 2000).

Plaintiffs have alleged, as stated above, that both the County and the Sheriff's Office receive federal funding and that each are responsible for ensuring that the Sheriff's Office comply with Title VI in terms of adopting language access policies that avoid discriminating against individuals due to their national origin. Given Title VI's broad mandate, this is enough to withstand Defendants' pleadings challenge at this juncture. Defendants' Motion to Dismiss the Fifth Cause of Action is therefore denied.

### E.   Bane Act Violation

In their Sixth Cause of Action, Plaintiffs assert a violation of California's Bane Act, Cal. Civ. Code § 52.1, against all Defendants. The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out "by threats, intimidation or coercion." Reese v. County of Sacramento, 888 F.3d 1030, 1040 (9th Cir. 2018). The rights protected against are those "secured [either] by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [the] State of California". Cal. Civ Code § 52.1(b).

///

Defendants' argument that the Bane Act is limited to constitutional violations, whereas Plaintiffs' claims are brought only under the aegis of 42 U.S.C. § 1983, a federal statute, thus appears to run counter to the language of the Bane Act itself, which clearly extends to both constitutional and statutory violations at both the state and federal level.  Even were a constitutional violation required, however, Plaintiffs' § 1983 claim, as articulated in the Second Cause of Action, is rooted in Defendant Roderick's alleged acts depriving them of their property interest in the apartment in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. SAC, ¶¶ 91-92.  Plaintiffs allege that because Defendant Roderick did this both intentionally, and employed threats, intimidation and coercion to do so, a violation of the Bane Act has been properly stated.  The Court agrees.  Defendants' request for dismissal of the Sixth Cause of Action is also denied.

### F. Claims under Government Code § 11135

Plaintiffs' Eighth Cause of Action is premised on a California's statutory prohibition against discrimination in "any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state or receives any financial assistance from the state."  Cal. Gov't Code § 11135(a).  In linking its anti-discrimination mandate to the receipt of state funding, § 11135 operates as the state counterpart to the federal prohibition as embodied by Title VI.

In moving to dismiss, Defendants argue that "[n]o California court has found that the County or Sheriff's Office in providing deputies to respond to civil actions in landlord/tenant disputes constitutes a program or activity within the meaning of [the] statute."  Defs.' Mot., ECF 17-1, 9:10-12.  In support of that contention, Defendants point out that public safety and/or law enforcement is not specifically enumerated as a "program or activity" within the definitions contained in the implementing regulations. Cal. Code Regs., tit. 2, § 11150.

As Plaintiffs argue in opposition, however, numerous courts, including this one, have applied § 11135 to law enforcement departments under a variety of fact patterns.

See, e.g., Jewett v. Cal. Forensic Medical Group, Inc., No. 2:13-cv-0882 MCE AC P, 2017 WL 980446 (Mar. 13, 2017) (certifying class certification of claims against Shasta County, including those brought under § 11135 against County and Sheriff), as adopted by the undersigned at 2017 WL 1356054 (E.D. Cal. Apr, 5. 2017); C.B. v. Moreno Valley Unified Sch. Dist., 544 F. Supp. 3d 973, 994 (C.D. Cal. 2021) (denying motion to dismiss § 11135 disparate impact claim against County and Sheriff); Meister v. City of Hawthorne, No. CV-14-1096-MWF (SHx), 2015 WL 12762058 at *11 (C.D. Cal. June 10, 2015) (denying summary judgment as to § 11135 claim against City and Police Department); Fetter v. Placer County Sheriff, No. 2:12-cv-02235-GEB-EFB, 2014 WL 4078638 at *6 (E.D. Cal. Aug. 14, 2014) (denying motion to dismiss § 11135 claim against Sheriff).  Significantly, too, even the implementing regulations, upon which Defendants rest their argument that the § 11135 claims lack viability, merely state that programs and activities subject to the statute "include but are not limited to" the examples it proceeds to cite.  Cal. Code Regs., t. 2, § 11150.

      Because the Eighth Cause of Action clearly avers that both the County and the Sheriff's Office receive financial assistance from the State of California to support their law enforcement activities and are thus subject to liability under § 11135 (see SAC, ¶¶ 135, 138) and since there is no basis for concluding that the statute cannot apply to the circumstances present here as a matter of law, Defendants' challenge to the statute cannot be adjudicated in the context of a motion to dismiss.  Defendants' request that the Eighth Cause of Action be dismissed is therefore denied.

      **G.**    **Petition for Writ of Mandate**

      Plaintiffs' Ninth Cause of Action seeks a writ of mandate under California Code of Civil Procedure § 1085 compelling Defendants to comply with their duties to provide language access to LEP persons under both Title VI and the Dymally-Alatorre Bilingual Services Act, California Government Code §§ 7299, et seq.  Defendants seek dismissal of Plaintiffs' mandamus claim on grounds that writs of mandate under § 1085 are not available in federal court.

Defendants' conclusion in this regard sweeps too broadly. This Court previously decided to exercise supplemental jurisdiction over a § 1985 mandamus claim in Twin Sisters Gun Club v. Emlen, No. 2:17-cv-01526 MCE-GGH, 2018 WL 1335394 (E.D. Cal. Mar. 15, 2018). It noted that while principles of comity have led some courts to deny altogether a federal court's ability to exercise supplemental jurisdiction over California law-based mandamus claims under § 1085 (see Hill v. Cty. of Sacramento, 466 Fed. Appx. 577, 579 (9th Cir. 2012), granting supplemental jurisdiction over a California mandamus claim is nonetheless not prohibited. Emlen, 2018 WL 1335394 at *6, citing Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U., 980 F. Supp. 2d 1160, 1184 (E.D. Cal. 2013).

Here, Defendants have not shown that factors of comity should cause this Court to refrain from exercising jurisdiction over Plaintiffs' mandamus claim. Defendants have not shown that novel state law issues predominate over the federal claims. Nor have they argued that this case raises "exceptional circumstances that constitute a "compelling reason" for declining jurisdiction. See 28 U.S.C. § 1367c). Consequently, Defendants' Motion to Dismiss the Ninth Cause of Action is denied.

### H.   Negligence claims

Defendants Roderick, as well as the Municipal Defendants, seek dismissal of Plaintiffs' negligence claim as set forth in the Tenth Cause of Action, albeit on different grounds. Defendants County and the Sheriff's Office argue that because California Government Code § 815 abolishes common law forms of liability for public entities, Plaintiffs' negligence claim necessarily fails. Defendant Roderick, for his part, argues that the claim fails against him in the absence of any cognizable legal duty owed by him to Plaintiffs.

Defendants are wrong in asserting that Officer Roderick owed no duty to Plaintiffs as a matter of law, and therefore cannot possibly be liable under a negligence theory. Whether or not a duty of care exists under California law depends on the consideration of a number of factors, including "'the foreseeability of harm to the plaintiff, the degree of

certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy or preventing future harm, [and] the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care'." Catsouras v. Dept' of Cal. Hwy. Patrol, 181 Cal. App. 4th 856, 881 (2010), quoting Rowland v. Christian, 69 Cal. 2d 108, 113 (1968).  Assessing this myriad of factors as applied to the present case calls for factual and policy determinations far beyond the purview of a motion to dismiss.

With respect to the Municipal Defendants' liability, as indicated above they rely on § 815 in arguing that no negligence claim can be asserted against them. Plaintiffs, however, point by way of opposition to the fact that another statute, § 815.2, makes public entities liable for injuries proximately caused by the acts or omissions of an employee acting within the scope of his employment if a cognizable cause of action could be asserted against the employee.  Plaintiffs claim that because the County and the Sheriff's Office may accordingly be held liable for Roderick's negligence, which cannot be ruled out by way of a motion to dismiss, Plaintiffs' negligence claim against the Municipal Defendants is proper.  Since the SAC clearly alleges that Roderick, acting in the scope of his employment, negligently caused injuries to Plaintiffs (SAC, ¶¶ 152-58), Plaintiffs' negligence claim against the County and the Sheriff's Office also survives pleadings scrutiny at this juncture.

### I. Wrongful Eviction claim

Plaintiffs' First Cause of Action alleges retaliatory eviction against Defendant Roderick in addition to Estrada and the owners of the property.  In now moving to dismiss, Roderick alleges the cause of action is factually inapplicable to his involvement in the matter because one of the elements of common law wrongful eviction is "forcible entry," which he claims requires unlocking a tenant's door without his or her consent, or alternatively entering by other affirmative means like breaking open doors or windows, or even by entering and changing locks without the tenant's permission.  Defs.' Mot, ECF

1  No. 17-1, 11:109, citing Spinks v. Equity Residential Briarwood Apts., 171 Cal. App. 4th

2  1004, 1039 (2009).  According to Roderick, because he engaged in no such forcible

3  entry the wrongful eviction claim against him fails.

4  While Roderick focuses on the lack of specific physical acts in arguing that liability

5  is foreclosed, plaintiffs point out that under the California statute defining forcible entry in

6  the context of obtaining possession or real property, liability is also triggered by a person

7  who enters into real property "by any kind of . . . circumstance of terror".  Cal. Code

8  Civ. P. § 1159(a)(1).  The statute further extends liability to those who "turn[] out by. . .

9  threats, or menacing conduct, the party in possession." Id. at § 1159(a)(2).

10  In Bedi v. McMullan, 160 Cal. App. 3d 272 (1984), the court was confronted with

11  the propriety of an eviction that occurred when the property owner, together with a

12  uniformed deputy, appeared at plaintiffs' home, entered without permission once the

13  door was opened, and immediately demanded that plaintiffs leave.  Although the

14  defendants in Bedi did actually "forcibly enter" the premises as described above, the

15  court noted that "the fact the Bedis bowed to the implicit threat of force posed by the

16  marshal [and left the premises] rather than precipitate a showdown in no way undercuts

17  their cause of action for forcible entry and detainer." Id. at 275-76.

18  The Court believes that Bedi's rationale applies equally to this case.  The SAC

19  alleges that after Roderick "knocked violently" on Plaintiffs' door and Maria answered, he

20  "blocked the door" for 30-45 minutes and prevented Plaintiffs from leaving until Maria

21  relented to his demands for vacating the apartment by agreeing to move out by midnight

22  even though she had no place to go.  SAC, ¶¶ 43, 49-53.  Maria claims she did this

23  because of Roderick's "intimidation, aggressive attitude, and explicit threats" that he

24  would come back to "take her out" if she did not do so, which caused her to fear both

25  losing the apartment and potentially being deported. Id. at ¶ 55.  In the Court's

26  estimation, the fact that Roderick purportedly "blocked the door" and prevented Plaintiffs

27  from leaving is not functionally different from actually entering the apartment, especially

28  since the threats and intimidation enumerated in the SAC appear to have been the

salient factor in causing Plaintiffs to vacate the premises, with such threats also constituting forcible entry under § 1159.  Defendant Roderick's Motion to Dismiss the First Cause of Action is thereby denied.

**CONCLUSION**

For all the above reasons, Defendants' Motion to Dismiss (ECF No. 17) is DENIED,[6] except with respect to the Third and Fourth Causes of Action, as to which the Motion is GRANTED, with leave to amend.  If Plaintiffs desire to file a Third Amended Complaint, they are directed to do so not later than twenty (20) days following the date this Memorandum and Order is electronically filed.  Failure to do so will result in dismissal of the claims already dismissed by this Order, with prejudice and without further notice to the parties.

IT IS SO ORDERED.

Dated:  September 14, 2022

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] Having determined that oral argument would not be of material assistance, the Court ordered the Motion submitted on the briefs pursuant to E.D. Cal. Local R. 230(g).